IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THREE RIVERS HYDROPONICS, LLC, | CIVIL ACTION _____ |
| Plaintiff, | JUDGE _____ |
| vs. | Electronically Filed |
| FLORISTS' MUTUAL INSURANCE COMPANY | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff Three Rivers Hydroponics, LLC ("Three Rivers") hereby files the instant Complaint against Defendant Florists' Mutual Insurance Company ("Florists"), and in support thereof, avers as follows:

## INTRODUCTION

This case involves the destruction of Three Rivers', a thriving local business and job creator that used to hydroponically grow and distribute fresh produce to consumers in the Pittsburgh and surrounding areas. On June 30, 2014, a component of Three Rivers' Ozone system, the ozone generator, caught fire, which led to the failure of other Ozone system components. Days later, Three Rivers determined that its existing crops had failed. Three Rivers promptly submitted equipment breakdown and crop loss claims to Florists. The estimate for the replacement of the Ozone system was $41,553.50, which Three Rivers did not have the means to pay. In support of its crop loss claim, Three Rivers supplied Florists with the reports from reputable independent agricultural experts, which supported Three Rivers' claim that the

crop loss was due to the Ozone system failure, and therefore a covered loss.  In response, Florists retained the services of Donan Engineering ("Donan") to investigate the cause and the extent of damage to the Ozone system and crops.

Remarkably, Donan Engineering had no prior experience with the Ozone system at issue, and its personnel had to "Google" it the night before the inspection.  During its investigation, Donan merely interviewed one of the owners of Three Rivers and secured photographs of the Ozone system.  Despite Three Rivers' report that *all* of the Ozone system components were broken, Donan failed to test the components, and baldly concluded that only the ozone generator required replacement.  Based upon Donan's opinion, Florists offered to pay Three Rivers $7,341.85 representing the replacement cost of the ozone *generator*.  Three Rivers rejected Florists' offer since the amount would not cover the cost of replacing the Ozone *system*.

Over the next several months, Florists refused to answer Three Rivers' repeated inquiries regarding Donan's experience in evaluating the subject Ozone system and how Donan came to the conclusion that only the ozone generator required replacement.  Moreover, Florists completely ignored Three Rivers' crop loss claim and Three Rivers' request to separate the crop loss claim from the equipment breakdown claim.

In October 2014, as Three Rivers' peak growing season was nearing, Three Rivers allowed Florists yet another inspection of the Ozone system to determine the cause and extent of damage to the Ozone system and crops.  This time, representatives from Florists, Donan and Simpson Engineering, the manufacturer of the ozone generator, attempted to repair the Ozone system by replacing the ozone generator, but their collective efforts failed.  Rather than promptly paying Three Rivers the amount necessary to replace the Ozone system and allow Three Rivers to re-commence operations, Florists offered to settle for a sum that would not come close to

replacing the Ozone system, all the while continuing to ignore the crop loss claim.  As a result of Florists' unconscionable conduct, Three Rivers lost profits, income, sales contracts, certifications and grants and was forced out of business.  It has been sued by third party vendors and is in the process of defaulting on its bank loans.

## THE PARTIES

1.     Plaintiff Three Rivers is a limited liability company organized and existing in the Commonwealth of Pennsylvania which, at all times material and relevant herein, has had its principal place of business at 127 Cold Springs Road, Sutersville, Pennsylvania 15083.

2.     Defendant Florists is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 1 Horticultural Lane, Edwardsville, Illinois 62025.

## JURISDICTION AND VENUE

3.     The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     Venue in this district and division is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### I.     Three Rivers' Business

5.     At all times material hereto, Three Rivers operated a commercial greenhouse, located at 111 Clay Lane, Perryopolis, Fayette County, Pennsylvania, specializing in the production of hydroponic produce and herbs.

6.     At all times material hereto, Three Rivers had contracts with various retail grocery stores in Pennsylvania and New York to supply hydroponic produce and herbs for sale; and, was engaged in discussions to expand the supply of hydroponic produce and herbs for sale to retail grocery stores in the Washington DC, Maryland and Virginia area.

**II.    Three Rivers' Ozone System**

7.     Three Rivers utilized ecologically friendly methods of crop cultivation, including the use of an Ozone system designed to treat and disinfect (sterilize) the product water used for crop production.

8.     Three Rivers cannot cultivate crops for retail sale without a fully functioning Ozone system with proper controls.

9.     The Ozone system utilized by Three Rivers was acquired in 2012 from Climate Control Systems, Inc., which assembled the Ozone system as a "Plug-n-Play" with the exception of two (2) plumbing connections.

10.    The Ozone system delivered product water from a storage tank via an integrated one (1) horsepower process pump.

11.    The Ozone system has four (4) major components: a feed gas system, ozone generator, gas injection system and oxidation-reduction potential ("ORP") controller all integrated on a steel frame.

12.    The feed gas system includes an oxygen concentrator, which by way of a compressed air system takes atmospheric oxygen in the air and separates the carbon dioxide and nitrogen to attain an approximate 98% purity of oxygen, which feeds the ozone generator.

13.    The ozone generator, manufactured by Simpson Environmental Corporation (also referred to as "Simpson Environmental Services"), splits the oxygen molecules into single

oxygen atoms and then re-combines them to form Ozone, which is necessary for appropriate levels of sterilization of product water.

14.     The gas injection system includes a back flow protection system, a redundant check valve system, a U-tube back flow device and a Mazzei injector, which delivers and dissolves the Ozone into the nutrient solution to the root zone.

15.     Process control included an oxidation reduction potential (ORP) controller, which is a device attached to a sensor that detects, monitors and safeguards the proper amount of Ozone in the product water.

16.     Additional process control included an ambient Ozone detection system, which identifies dangerous levels of Ozone in the atmosphere.

### III.     The Ozone System Failure

17.     On June 30, 2014, Three Rivers observed an explosion and fire involving its Ozone system's ozone generator, necessitating a manual shut down of the Ozone system.

18.     Based upon information and belief, the ozone generator experienced an electrical short in one of the reactor cells resulting in excessive heat causing a meltdown and burning of a poly tube oxygen supply line resulting in flames shooting out of air vents of the steel enclosure.

19.     Based upon information and belief, the fire caused the failure to the internal components of the ozone generator, including, but not limited to, the ozone generator reactor cell, power supply, and power controller.

20.     Based upon information and belief, the manual shut down of the Ozone system did not allow for proper sequencing of normal operation shut down causing failure to the oxygen concentrator, compressed air system, injection system, including the back flow protection system

and redundant check valve system, which caused pump cavitation resulting in damage to the seals and subsequent leakage.

21.     Based upon information and belief, the Ozone system mechanical breakdown caused the ozone generator to run in full demand mode, thereby causing all crops being cultivated in the Three Rivers' greenhouse to experience Ozone damage rendering them unfit for sale.

**IV.     The Florists' Insurance Policy**

22.     On June 30, 2014, Three Rivers and its commercial greenhouse was insured by a business package policy of insurance issued by Florists, being policy number BP-13221.  A certified copy of policy number BP-13221 as produced to Three Rivers by Florists upon Three Rivers request for a certified copy of the applicable policy is attached hereto as Exhibit "A."

23.     Included within policy number BP-13221 is a supplemental coverage, being BPP-Section I, Coverage H13, providing coverage in the amount of not less than $300,000 for damages arising from Equipment Breakdown.  See, Exhibit "A."

24.     All payments due and owing under policy number BP-13221 were paid in a timely manner and the policy was in full force and effect on June 30, 2014.

25.     Policy number BP-13221 does not provide insurance coverage for business interruption losses.

**V.     The History of the Insurance Claim**

26.     On or about July 7, 2014, Three River presented claims to Florists for all coverage due and owing under policy number BP-13221 as a result of damages arising from the June 30, 2014 incident.

27.     On July 15, 2014, Three Rivers provided Florists with an estimate/quote for the replacement of the Ozone system, totaling $41,553.50, an amount of money that at all times was beyond Three Rivers' means.

28.     On July 16, 2014, Three Rivers provided Florists with a report from Penn State University's agricultural expert, who opined that pathogens did not cause crop loss.

29.     On July 18, 2014, Florists, through its electrical engineering expert (also referred to as "Donan"), conducted a study of Three Rivers' Ozone system to determine the cause of the damage and whether it could be repaired.

30.     Donan's thirty (30) minute study consisted of securing Three Rivers' history concerning the June 30, 2014 incident and taking pictures of the components of the Ozone system.

31.     During the July 18, 2014 study, Donan advised Three Rivers that this was the first Ozone system he had evaluated; and, that he had to "Google" the Ozone system the night before the study to try to understand how it operated.

32.     During the study, Three Rivers advised Donan: (1) the Ozone system remained unplugged from the electrical outlet due to safety concerns; (2) the oxygen concentrator was tested by plugging it into an electrical outlet, which caused the system to blow a fuse every time it was in use for more than five (5) minutes; and, (3) a remote audible/ambient sensor was continuing to show dangerous levels of Ozone in the atmosphere, despite no Ozone production since June 30, 2014.

33.     Notwithstanding these reported facts, Florists' electrical engineer, Donan, did not test the individual components of the Ozone system to determine if they functioned properly.

34.     On July 22, 2014, Florists advised Three Rivers that its electrical engineer disagreed with the estimate/quote for the replacement of the Ozone system because many of the components set forth in the estimate/quote did not require replacement or repair.

35.     On July 22, 2014, Three Rivers requested that Florists provide information relative to: (1) its electrical engineer's experience in evaluating this type of Ozone system; and, (2) how its electrical engineer determined that there were other components of the Ozone system contained within the estimate/quote that were not damaged.

36.     At all times material hereto, Florists never responded to either of these inquiries.

37.     Instead, on July 23, 2014, Florists advised Three Rivers that:

    a.   It would pick up damages to equipment caused by a covered cause of loss;

    b.   It would owe to repair/replace the components damaged by the fire/explosion to return Three Rivers to the position it was in before the loss;

    c.   The "component" (ozone generator) it verified as damaged was available for purchase through the manufacturer, Simpson Environmental Corp.;

    d.   If Three Rivers felt that it [Florists] has overlooked damages, Three Rivers was to explain how the other equipment included in the quote was damaged and how/who determined this; and,

    e.   Hartford Steam Boiler Inspection and Insurance Company would pick up any damages related to a covered "Accident."

38.     On July 28, 2014, Florists advised Three Rivers that:

    a.   It had not yet received its electrical engineer's report;

    b.   Three Rivers could move forward with the repairs it felt were necessary to maintain its business;

    c.   The policy of insurance would only pay to repair/replace components damaged during the event;

    d.   If Three Rivers replaced a component, it would need to maintain the component on its property for potential damage testing and/or subrogation evidence;

    e.   Simpson Environmental Services was willing to do the repairs/replacement of the SW20M ozone generator; and,

    f.   If Three Rivers elected to change the entire Ozone system, Three Rivers would be responsible for any amount due to the supplier/contractor above what Florists agreed as covered damages.

39.    On July 29, 2014, Three Rivers inquired of Florists if it would split the crop loss from the equipment failure.

40.    At all times material hereto, Florists never responded to Three Rivers' request to split the crop loss claim from the equipment failure claim.

41.    On or about August 1, 2014, Florists' electrical engineer, Donan, issued its report regarding its July 18, 2014 study of Three Rivers Ozone system.

42.    Based upon information and belief, Florists' electrical engineer, Donan, either intentionally or with reckless indifference to Three Rivers' rights concluded that the cause of the high concentration of ozone in the hydroponic system can be attributed to factors such as "operator error, incorrectly sized equipment, or defective equipment," but failed to identify any facts to support that conclusion.

43.    Furthermore, notwithstanding Donan's reported comments that "further study and testing may be able to determine the exact cause of the failure," Florists either intentionally or

with reckless indifference to Three Rivers' rights failed to pursue further study and testing at that time.

44.     Ultimately, Florists, through its electrical engineer's study and report, determined that Three Rivers' Ozone system could be repaired solely through the replacement of the ozone generator, which was available through the manufacturer, Simpson Environmental Corporation.

45.     Florists' electrical engineer, Donan, either intentionally or with reckless indifference to Three Rivers' rights also misstated in its report that one of Three Rivers' owners "believes that no other equipment was damaged by the fire other than the ozone generator."

46.     Florists' electrical engineer intentionally or with reckless indifference to Three Rivers' rights claimed to have "studied" all components of the Ozone system for damage, but no damage was found.

47.     Florists' electrical engineer intentionally or with reckless indifference to Three Rivers' rights failed to represent the significance of the photograph of the oxygen concentrator with the blown fuse as depicted in its report, notwithstanding knowledge that this component was not functioning as it did prior to the June 30, 2014 equipment breakdown and fire.

48.     Florists' electrical engineer intentionally or with reckless indifference to Three Rivers' rights failed to show a photograph of the failed ambient ozone censors in its report, notwithstanding knowledge that this component was not functioning as it did prior to the June 30, 2014 equipment breakdown and fire.

49.     Based upon information and belief, Florists' electrical engineer either intentionally or with reckless indifference to Three Rivers' rights failed to "test" the components of the Ozone system for damage.

50.     Based upon information and belief, Florists knew or should have known that its electrical engineer was not competent or qualified to evaluate Three Rivers' Ozone system.

51.     Based upon information and belief, Florists knew or should have known that its electrical engineer intentionally or with reckless indifference to Three Rivers' rights failed to "test" the components of the Ozone system; and, stated without any factual basis that the cause of the equipment failure could have been related to operator error, incorrectly sized equipment, or defective equipment.

52.     On August 5, 2014, Florists, either intentionally or with reckless indifference as to the accuracy and truthfulness of its electrical engineer's opinions and the facts supporting them, advised Three Rivers that:

a.   The only damaged component related to the fire and explosion was the SW20M Ozone Generator, which "Your Real Property" coverage would pick up the cost to replace this component; and,

b.   Florists was waiting for Hartford Steam Boiler Inspection and Insurance Company to provide its coverage review and how it planned to proceed.

53.     On August 5, 2014, Three Rivers:

a.   Reiterated its July 22, 2014 inquiry to Florists as to how its electrical engineer determined that only the generator required replacement, and other components of the Ozone system were not damaged;

b.   Advised Florists that the oxygen concentrator continued to blow a fuse, indicating a problem; and,

c.   Inquired of Florists how its electrical engineer accounted for the overdose of ozone burning off the roots of its crop.

11

54.     At all times material hereto, Florists either intentionally or with reckless indifference to Three Rivers' rights never responded to Three Rivers' inquiries as to the depth of its electrical engineer's experience in evaluating the Ozone system, and/or how its electrical engineer formed the basis of his opinions.

55.     Rather than responding to Three Rivers' requests for information about its electrical engineer's experience, or how its electrical engineer formulated his opinions; and, rather than having its electrical engineer revisit inspection and testing of the Ozone system's other components to clear up any discrepancies, on August 5, 2014, Florists:

      a.   Advised Three Rivers that if it disagreed with the damage assessment, it needed to have a contractor view the damages and supply a quote;

      b.   Questioned the truthfulness of Three Rivers' statements relative to the other malfunctioning components of the Ozone system by assuming that Three Rivers was running the Ozone system without the ozone generator;

      c.   For the first time, queried of Three Rivers how it determined that the crop loss was due to an overdose of ozone when Penn State's expert suspected an abiotic factor as the cause of the crop loss; and,

      d.   Advised that it would not pick up damages due to faulty design; and, that Three Rivers would need to address that issue with the supplier or manufacturer of the unit it purchased.

56.     On August 5, 2014, Three Rivers advised Florists, *inter alia*, that:

      a.   The Ozone system was not being used;

      b.   The oxygen concentrator and other components of the system, except the Ozone generator, were independently tested;

c.  Florists' electrical engineer was aware at the time of his survey of the Ozone system that the oxygen concentrator was blowing fuses and that the remote audible and visual Ozone sensors were malfunctioning;

d.  Penn State's testing of Three Rivers' well water and fertilizer mix was normal; therefore, the only remaining cause of the crop damage was the failed Ozone system, a conclusion supported by the failed oxygen concentrator and sensors; and,

e.  By this time, Three Rivers lost customers, including Giant Eagle (21 stores), Delallo's (1 store), Shop N Save (4 stores), Labriolas (5 stores) and was in jeopardy of losing its remaining business.

57.  On August 5, 2014 Florists notified Three Rivers of an exclusion in the policy, which follows:

3.  Cause of Loss or Damage Not Insured

*Insurance does not apply to loss, damage or expense caused by or resulting from:*
j.  *By pests or disease, whether direct or indirect, proximate or remote, in whole or in part caused by, contributed to, or aggravated by a covered Cause of Loss.*

58.  On August 6, 2014, Florists advised Three Rivers that: (1) Simpson Environmental Services agreed to reinstall the Ozone generator and test and calibrate the ORP controller; (2) it did not have a link between the crop loss and the fire/explosion that occurred in the ozone generator; and, (3) Simpson Environmental Services would seek to clarify those issues

59.  Based upon information and belief, Three Rivers avers that Florists intentionally or with reckless indifference to Three Rivers' rights misrepresented that it did not have a link between the equipment breakdown and/or fire and the crop loss because Three Rivers provided

Florists with a report from Penn State, as well as information concerning the failing oxygen concentrator and sensors, which supported the reasonable conclusion that there could be no other reasonable explanation for the crop loss except equipment breakdown.

60.     Based upon information and belief, Three Rivers avers that Florists, intentionally or with reckless indifference to Three Rivers' rights, failed to timely inspect or study the relationship between the equipment breakdown and the crop loss.

61.     On August 6, 2014, Florists presented to Three Rivers a check in the amount of $7,341.85 representing the amount due to replace the damaged ozone generator and advised Three Rivers of its obligation to cooperate with Florists' investigation of the claim and its need to have Simpson Environmental Services inspect the equipment.

62.     On August 18, 2014, Three Rivers advised Florists that it: (1) was not accepting the $7,341.85 payment as it only represented a minimal part of the damages caused by the equipment failure; (2) denied refusing another inspection by Simpson Environmental Services; and, (3) was attempting to seek an unbiased expert opinion as to the cause of the equipment failure.

63.     On August 19, 2014, Florists advised Three Rivers that it: (1) was not denying any part of its claim; (2) was still investigating the issues with the water sterilization system; and, (3) did not dispute Penn State's findings regarding the crop loss; however, it still needed to determine what caused over-sterilization of the crop.

64.     On August 19, 2014, Three Rivers provided Florists with a report from JR Peters Inc., an agricultural fertilizer manufacturer and agricultural researcher, dated August 7, 2014, which showed that the cause of Three Rivers' crop loss was not due to nutritional deficiencies.

65.     On September 19, 2014, Florists requested Three Rivers submit a fully executed sworn statement in proof of loss within sixty (60) days, including: (1) quotes for contracted repairs; (2) an itemized inventory of the lost crop; and, (3) a copy of its ozone expert's report that details the cause of the sterilization equipment malfunction and its relationship to the crop loss.

66.     By this time Florists had yet to conduct a study or investigation into the cause of the crop loss, and continued to ignore the facts surrounding the equipment failure, Penn State's expert's opinions and J.R. Peters, Inc.'s expert's opinions  all of which supported Three Rivers' position that the crop loss had to be related to the equipment failure.

67.     On October 3, 2014, Three Rivers requested that Florists arrange a second inspection survey and repair with Simpson Environmental Services, which was scheduled for October 20, 2014.

68.     On October 20, 2014, representatives from Simpson Environmental Services, Donan Engineering and Florists came to Three Rivers' place of business to further inspect and attempt to repair the Ozone system, but they failed to repair the Ozone system.

69.     Notwithstanding Florists' August 6, 2014 representations that Simpson Environmental Services would "seek to clarify" the cause of the equipment failure and crop loss, either Simpson Environmental Services did not clarify those causation issues, or Florists intentionally or with reckless indifference to Three Rivers' rights failed to disclose Simpson Environmental Services' causation opinions.

70.     On October 22, 2014, after Simpson Environmental Services' failure to repair the Ozone system, rather than agreeing to pay for the repair or replacement of the Ozone system, Florists intentionally or with reckless indifference to Three Rivers' rights perpetuated the rendering of imperfect performance by continuing to attempt to resolve the claim for amounts

less than the repair or replacement cost of the Ozone system, let alone adjusting for the value of the crop loss.

71.     On October 23, 2014, Florists, rather than agreeing to pay the repair or replacement cost of the Ozone system, which was clearly indicated under the circumstances: (1) denied claims, purported to have been made by Three Rivers, which Three Rivers denies making, that Florists was not handling the claim in good faith; (2) approved of Florists' conduct in handling the claim; (3) confirmed that it made a settlement demand, which Three Rivers rejected; (4) claimed that it could not properly evaluate the claim without Three Rivers' expert's opinions; and, (5)  provided Three Rivers with a deadline until 2:00 a.m. central time the next day to contact them if Three Rivers was interested in settlement; otherwise, Florists was going to retain counsel to resume handling of the matter.

72.     On November 18, 2014, Three Rivers hand delivered its Sworn Statement in Proof of Loss to Florists' attorneys.

73.     On December 3, 2014, Florists advised Three Rivers that: (1) it received its Sworn Statement in Proof of Loss, which was deficient; and, was therefore being rejected; (2) it was extending to Three Rivers additional time to correct the deficiencies noted therein, which included: (1) the failure to complete the valuation portion of the proof of loss ("Actual Cash Value", "The Whole Loss and Damage", "The Amount Claimed", "Supplemental Claim"); (2) Certification of the cause of loss in which Three Rivers was making a claim for damages; (3) Certification of the date and time in which the loss took place; (4) handwritten signatures of the claimants and a witness; and, (5) attached supporting documentation to show how the costs are related to the submitted claim.

74.     On December 16, 2014, Three Rivers submitted to Florists' attorney a second Sworn Statement in Proof of Loss and its experts' reports from the following individuals: Don Lanini, Pacific Ozone; Thomas Graham, Ph.D., Space Life Sciences Laboratory; Sara R. May, Coordinator, Penn State Plant Disease Clinic; and, Krystal Snyder, Technical Specialist, JR Peters, Inc.

75.     On December 16, 2014, Three Rivers also reminded Florists that five (5) months have passed since the date of the loss and Florists was no closer to settling the claim in a reasonable manner.  Three Rivers advised Florists that it suffered the loss of valuable customer relationships and its entire customer base as well as many agricultural and governmental certifications and vendor credentials required to grow and sell product; was straddled with business debt with no incoming revenue to satisfy it; and, therefore, has been forced out of business.

76.     On January 5, 2015, Florists acknowledged receipt of the Sworn Statement in Proof of Loss.  Florists claimed that it required additional time to review the new information included in the December 16, 2014 submission.  Florists also requested a third inspection to evaluate Pacific Ozone's and Thomas Graham's opinions.

77.     Based upon information and belief, Florists intentionally or with reckless indifference to Three Rivers' rights: (1) ignored Three Rivers representations that components, other than the ozone generator, malfunctioned as a result of the equipment failure and/or fire; (2) repeatedly ignored Three Rivers' requests for information concerning its electrical engineer's expert's experience and qualifications in evaluating Ozone systems; (3) repeatedly ignored Three Rivers' requests for information as to how its electrical engineer concluded that components, other than the ozone generator, were not damaged as a result of the equipment breakdown and/or

fire; and, (4) unreasonably relied upon an incomplete and inaccurate study and report of its electrical engineer, which contained misrepresentations and unfounded conclusions, in unreasonably denying Three Rivers' claim for Ozone system repair or replacement costs.

78.     Based upon information and belief, Florists intentionally or with reckless indifference to Three Rivers' rights: (1) ignored Three Rivers' proffered credible and unrefuted evidence linking its crop loss to the equipment breakdown; (2) ignored Three Rivers' request to timely evaluate and separate the crop loss claim from the equipment damage claim; (3) failed to investigate the cause of the crop loss, let alone in a timely manner; (4) misrepresented that Simpson Environmental  Services would seek to clarify the causal nexus between the June 30, 2014 incident and crop loss; and/or (5) failed to provide Three Rivers with Simpson Environmental Services' opinions relative to the cause of the equipment breakdown and crop loss.

79.     Based upon information and belief, Florists intentionally or with reckless indifference to Three Rivers' rights failed to promptly pay Three Rivers the cost to repair or replace the Ozone system after Simpson Environmental Services' failed attempts at replacing the ozone generator and repairing the Ozone system, and instead without any basis or support attempted to negotiate an unreasonable settlement with Three Rivers for amounts that would not even cover the cost to repair or replace the Ozone system.

80.     Florists had a duty to investigate the claims presented by Three Rivers in good faith.

81.     Florists had a duty to investigate the claims presented by Three Rivers in a timely manner.

82.     Florists had a duty to conduct a reasonable evaluation of the claims presented by Three Rivers based upon the facts known or available to it.

83.     Florists has illegitimately and without reasonable basis refused to recognize the scope and extent of Three Rivers' equipment breakdown and malfunction.

84.     Florists has illegitimately and without reasonable basis refused to pay for replacement or repair of any and all broken components of the Ozone system beyond the ozone generator.

85.     Three Rivers has presented evidence to Florists that the entire Ozone system malfunctioned and is broken.

86.     Three Rivers has presented evidence to Florists that replacement of only the ozone generator will not repair or restore the function of the Ozone system.

87.     Three Rivers has presented evidence to Florists that the entire Ozone system must be repaired or replaced before business operations can be safely, efficiently and effectively resumed.

88.     Three Rivers has presented evidence to Florists that it lost all crops existing on June 30, 2014 as a direct and proximate result of equipment malfunction due to ozone oversaturation.

89.     Three Rivers has presented evidence to Florists that the cost of replacing all parts of the Ozone system damaged by the June 30, 2014 malfunction and fire exceeds the cost of replacing the damaged Ozone system with a new Ozone system.

90.     As a direct and proximate result of the equipment breakdown and Ozone system malfunction, Three Rivers has lost all crops then-existing.

91.     As a direct and proximate result of equipment breakdown and Ozone system malfunction, Three Rivers has been unable to resume business operations as of the date of the filing of this Complaint.

92.     As a direct and proximate result of equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has lost profits and income.

93.     As a direct and proximate result of equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has lost contracts for the sale of its products in approximately 51 retail establishments.

94.     As a direct and proximate result of equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has lost its regulatory credentialing and certifications.

95.     As a direct and proximate result of equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has lost a REAP grant in the amount of $9,619.00.

96.     As a direct and proximate result of equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has lost a CLEAResult grant through the Pennsylvania ACT 129 program in the amount of $49,390.05.

97.     As a direct and proximate result of equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has been forced to enter into hardship loans in the amounts of $70,750.00 and $54,900.00, respectively.

98.     As a direct and proximate result of equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has had suit filed against it in the Washington County, Pennsylvania Magistrate Court seeking judgment in the amount of $1,656.74 for boxes delivered on June 5, 2014.

99.     As a direct and proximate result of the equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers lost product UPC certification.

100.     As a direct and proximate result of the equipment breakdown, Ozone system malfunction, and Florists' reckless conduct in failing to promptly pay for the repair or replacement of the Ozone System and/or crop loss, Three Rivers has sustained approximate out-of-pocket costs in the amount of $20,000.00.

### COUNT I – BREACH OF CONTRACT

101.     Three Rivers incorporates by reference paragraphs 1-100 above as if set forth herein in their entirety.

102.     Policy Number BP-13221 referred to in paragraph 22 above and evidenced by Exhibit A hereto, provided coverage to compensate Three Rivers for damages resulting from an equipment breakdown and/or malfunction.

103.     Under the terms and conditions set forth in policy number BP-13221 referred to in paragraph 22 above and evidenced by Exhibit A hereto, Florists was contractually obligated to promptly pay such costs as were reasonably required to repair or replace damaged equipment and return Three Rivers to normal business operations in a timely manner.

104.     Under the terms and conditions set forth in policy number BP-13221 referred to in paragraph 22 above and evidenced by Exhibit A hereto, Florists was contractually obligated to promptly pay all damages caused by the June 30, 2014 equipment malfunction and fire, including the cost associated with the repair or replacement of the Ozone system and crop loss up to $300,000.

105.     Florists had a duty to timely and properly investigate, evaluate and attempt to settle claims presented under policy number BP-13221 in good faith and to act reasonably under the facts and circumstances presented.

106.     Florists breached the expressed and implied duties set forth in policy number BP-13221, including the implied covenant of good faith and fair dealing, by its failure to timely pay all benefits due and owing under policy number BP-13221.

107.     Florists breached the expressed and implied duties set forth in policy number BP-13221, including the implied covenant of good faith and fair dealing, by its failure to undertake a reasonable investigation of the claims presented by Three Rivers arising from the June 30, 2014 equipment breakdown and fire.

108.     Florists breached the expressed and implied duties set forth in policy number BP-13221, including the implied covenant of good faith and fair dealing, by its failure to attempt to negotiate a settlement which was fair and reasonable in light of the facts and circumstances presented.

109.     Florists has placed its own interests above the interests of its insured, Three Rivers, and has disregarded the interests of its insured, Three Rivers, in violation of its contractual obligations.

110.     Florists breached the contractual obligations due and owing to Three Rivers under policy number BP-13221 in bad faith.

111.     As a direct and proximate result of the bad faith breach of its contractual obligations, Florists is liable for payment of all contractual benefits, as detailed above, due and owing to Three Rivers as a result of the June 30, 2014 malfunction and/or failure of the Ozone system and resulting fire, in addition to all damages outlined above, arising from Florists' failure to honor its contractual obligations in a timely manner and in a manner in which was reasonable in light of the facts and circumstances presented.

## COUNT II – BAD FAITH

112.     Three Rivers incorporates by reference paragraphs 1-111 above as if set forth herein in their entirety.

113.     Florists knew or reasonably should have known under the facts and circumstances presented to it and as set forth above, that the entire Ozone system was damaged by the June 30, 2014 equipment breakdown/malfunction and resulting fire.

114.     Florists knew or reasonably should have known under the facts and circumstances presented to it and as set forth above, that the entire Ozone system needed to be repaired or replaced as a result of damages sustained in the June 30, 2014 equipment breakdown/malfunction and resulting fire.

115.     Florists knew or reasonably should have known that under the facts and circumstances presented to it and as set forth above, that any delay in repairing the Ozone system

would have a detrimental impact on Three Rivers' ability to resume normal and ordinary business operations.

116.    Florists knew or reasonably should have known that under the facts and circumstances presented to it and as set forth above, that any delay in replacing the Ozone system would have a detrimental impact on Three Rivers' ability to meet its contractual supply obligations.

117.    Florists lacked a reasonable basis in light of the facts and circumstances presented to refuse to promptly pay the full amount of contractual benefits due and owing to Three Rivers under policy number BP-13221 to compensate Three Rivers for damages caused by the June 30, 2014 equipment breakdown/malfunction and fire.

118.    Florists knew that it lacked a reasonable basis to refuse to pay the reasonable cost of repairing or replacing the Ozone system or recklessly disregarded its lack of reasonable basis for such refusal.

119.    Florists knew that it lacked a reasonable basis to refuse to pay the reasonable cost for the crops lost as a result of the June 30, 2014 equipment breakdown/malfunction or recklessly disregarded its lack of reasonable basis for such refusal.

120.    Florists knew that it did not have a reasonable basis for denying payment of the full amount of coverage due and owing to Three Rivers under policy number BP-13221 to compensate Three Rivers for all covered damages caused by the June 30, 2014 equipment breakdown/malfunction and fire and/or recklessly disregarded its lack of a reasonable basis.

121.    As a direct and proximate result of Florists' knowledge of and/or reckless disregard of its lack of reasonable basis for its coverage decisions, Three Rivers is entitled,

pursuant to 42 Pa. C.S.A. § 8371 to recover interest on the claim, punitive damages, court costs and attorney fees from Florists.

WHEREFORE, Plaintiff Three Rivers Hydroponics, LLC respectfully prays that judgment be entered against the Defendant Florists' Mutual Insurance Company for all contractual benefits due and owing under policy number BP-13221 as a result of damages sustained by the June 30, 2014 equipment breakdown/malfunction and fire, all damages proximately caused by Defendant Florists' Mutual Insurance Company's breach of its contractual obligations, all interest recoverable under law, punitive damages, court costs and attorneys' fees, together with such other and further relief as the Court may deem proper.

**A JURY TRIAL IS DEMANDED ON ALL ISSUES**

THREE RIVER HYDROPONICS, LLC,

Plaintiff,

s/ Tyler J. Smith_____
Tyler J. Smith
PA ID #74092
BORDAS & BORDAS, PLLC
One Gateway Center
420 Fort Duquesne Blvd.
18th Floor, West Wing
Pittsburgh, PA 15222
412-502-5000
412-235-7190 (fax)
tsmith@bordaslaw.com

and

s/ Frederick B. Goldsmith_____
Frederick B. Goldsmith
PA ID #78891
fbg@golawllc.com
E. Richard Ogrodowski
PA ID # 87464
ero@golawllc.com
Goldsmith & Ogrodowski, LLC

25

247 Fort Pitt Boulevard, 5th Floor
Pittsburgh, PA 15222
412-281-4340
412-281-4347 (fax)