IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THREE RIVERS HYDROPONICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-cv-00809 |
| | ) | |
| v. | ) | **ELECTRONICALLY FILED** |
| | ) | |
| FLORISTS' MUTUAL INSURANCE | ) | |
| COMPANY, and THE HARTFORD | ) | |
| STEAM BOILER INSPECTION AND | ) | |
| INSURANCE COMPANY, | ) | |
| | | |
| Defendant. | | |

## OPINION

**Mark J. Hornak, United States District Judge**

Now before the Court are Defendant The Hartford Steam Boiler Inspection and Insurance Company's ("HSB") Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 168 ("HSB's Motion"), and Defendant Florists' Mutual Insurance Company's ("Florists") Motion to Dismiss and Strike Portions of Plaintiff's Amended Complaint, ECF No. 170 ("Florists' Motion"), both seeking to extricate HSB from the case.

This is an insurance coverage dispute arising out of a June 30, 2014, incident at Plaintiff's commercial greenhouse, which produces hydroponic produce and herbs. (First Am. Compl., ECF No. 158, ¶¶ 8, 38.) Plaintiff alleges that a component of its hydroponic ozone system exploded and caught fire, damaging Plaintiff's crops. (*Id.* ¶¶ 38–42.) Plaintiff's original Complaint asserted claims for breach of contract and bad faith against Florists only, pursuant to the insurance policy for Plaintiff's commercial greenhouse issued by Florists, Business Package Policy Number BP-13221 ("Policy"). (Compl., ECF No. 1; *see also* Policy, ECF No. 158-2.) On May 30, 2017, Plaintiff amended its Complaint to include claims for breach of contract and bad faith against HSB,

1

Florists' reinsurer, and a new claim for civil conspiracy against both HSB and Florists. (First Am. Compl., ECF No. 158.) All told, the Amended Complaint contains the following counts: Count I, breach of contract against Florists; Count II, breach of contract against HSB; Count III, bad faith against Florists and HSB; and Count IV, civil conspiracy against Florists and HSB. (*Id.*)

HSB's Motion asks the Court to dismiss Counts II, III, and IV (breach of contract, bad faith, and civil conspiracy, respectively) against HSB. (HSB's Motion, ECF No. 168, ¶ 21.) Florists' Motion similarly seeks to dismiss Count IV (civil conspiracy) against Florists,[1] to strike language in specific paragraphs of Plaintiff's Amended Complaint alleging Florists is vicariously liable for HSB's acts and omissions or alleging that Florists breached the Reinsurance Agreement,[2] and to strike the "Introduction" section of the First Amended Complaint. (Florists' Motion, ECF No. 170, at 1.)

For the reasons that follow, HSB's Motion is granted in its entirety. Florists' Motion is granted in part and denied in part.

I.   **Legal Standard**

   **A. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.

---

[1] Florists did not challenge Plaintiff's breach of contract (Count I) or bad faith (Count II) claims against it at this juncture.
[2] Specifically, Florists takes issue with the language in paragraphs 5, 143–50, 168, and 171. (Florists' Motion, ECF No. 170, at 1.)

2

2008)). Plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The Court need not accept as true any unsupported conclusions, unsupported inferences, and "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Motion to Strike

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored by courts, and they are ordinarily granted only "where the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial to the movant." *Zappala v. Hub Foods, Inc.*, 683 F. Supp. 127, 131 (W.D. Pa. 1988). Motions to strike are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is "clearly apparent." *Fulton Fin. Advisors, Nat'l Ass'n v. NatCity Invs., Inc.*, No. 09-cv-4855, 2013 WL 5635977, at *18 (E.D. Pa. Oct. 15, 2013) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). A motion to strike is not the proper device for placing the actual merits of the party's pleadings in issue, or challenging the legal correctness of an argument. *Zappala*, 683 F. Supp. at 131.

## II. Count II: Breach of Contract Against HSB

To maintain a breach of contract claim under Pennsylvania law, a plaintiff must establish (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "Only a party to a contract can be

3

liable for breach of that contract." *McLaren v. AIG Domestic Claims, Inc.*, 853 F. Supp. 2d 499, 513 (E.D. Pa. 2012) (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991)). There are two relevant contracts in this case: (1) the Policy issued by Florists; and (2) the reinsurance agreement between HSB and Florists, wherein HSB agreed to reinsure Florists for equipment breakdown claims under Florists' insurance policies and maintained the right to investigate those claims ("Reinsurance Agreement"). Plaintiff alleges HSB breached duties it owed to Plaintiff under both contracts.

HSB asserts that it is not in privity with Plaintiff under either contract; therefore, Plaintiff is unable to prove the necessary elements of a breach of contract claim against HSB. HSB argues that (1) it is not a party to the Policy between Plaintiff and Florists; (2) Plaintiff is not a party to the Reinsurance Agreement; and (3) Plaintiff is not a third-party beneficiary of the Reinsurance Agreement. Plaintiff, in contrast, argues that Florists assigned its duties under the Policy to HSB, wherein HSB assumed a contractual duty to Plaintiff to "investigate, negotiate, and fund settlement payments in connection with Florists' policyholders' equipment breakdown claims," giving Plaintiff a direct right to relief for breach of contract against HSB. (Pl.'s Br. in Opp. to HSB's Motion, ECF No. 175, at 7.) Plaintiff further argues that it is an intended third-party beneficiary of the Reinsurance Agreement, and should be permitted to enforce the agreement against HSB. (*Id.* at 3–4.) The Court first analyzes whether there is a contract between Plaintiff and HSB before addressing whether Plaintiff is a third-party beneficiary of the Reinsurance Agreement.

### A. Privity of Contract

This Court's review of the averments in the Amended Complaint, the language in the Policy and the Reinsurance Agreement, and the applicable law supports the conclusion that the Amended Complaint fails to allege a contract between Plaintiff and HSB. As an initial matter, the

4

titles of Plaintiff's exhibits attached to the Amended Complaint are illustrative: "*Florists'* Insurance Policy," and "Reinsurance Agreement *Between Florists and HSB.*" (ECF Nos. 158-1, 158-2 (emphases added).) HSB is nowhere to be found in the Policy between Plaintiff and Florists. (Policy, ECF No. 158-1, at 3.) Similarly, Plaintiff is not a party to the Reinsurance Agreement. (Reinsurance Agreement, ECF No. 158-2, at 1.)

Plaintiff argues that HSB assumed a contractual duty to Plaintiff by the nature of the Reinsurance Agreement, which "assigned" Florists' duties with respect to investigating claims under the Policy to HSB; however, Plaintiff has identified nothing in the Reinsurance Agreement that relieved Florists of its obligations to Plaintiff in this regard. Rather, Florists and HSB entered into a contract and assumed obligations to each other—a common practice in the context of reinsurance and third-party claims investigators—but HSB did not directly assume any of Florists' obligations to Plaintiff under the Policy. Indeed, to adopt Plaintiff's interpretation of this arrangement absent evidence of a separate contract between Plaintiff and HSB would cut against established law, for "it is the general rule that an insured may bring claims for breach of contract and bad faith against the insurer who issued the policy but not against related parties, such as reinsurers and third party administrators, who are not in privity with the insured." *Brand v. AXA Equitable Life Ins. Co.*, No. 08-cv-2859, 2008 WL 4279863, at *2 (E.D. Pa. Sept. 16, 2008) (citing *Reid v. Ruffin*, 469 A.2d 1030, 1033 (Pa. 1983)).

### B. Third-Party Beneficiary Status

Pennsylvania law recognizes a limited exception to the general rule that an insured may not assert a direct claim against a reinsurer: if the insured is a third-party beneficiary of the reinsurance agreement, the insured can sue for breach of that agreement. *See, e.g., Reid*, 469 A.2d at 1032. Plaintiff argues that is the case here, and it seeks to recover from HSB for breach of the

5

Reinsurance Agreement using its asserted status as a third-party beneficiary. (Pl.'s Br. in Opp. to HSB's Motion, ECF No. 175, at 10–12.) HSB argues that nothing in the Reinsurance Agreement evidences an intent to give Plaintiff third-party beneficiary status. (Def.'s Br. in Supp. of HSB's Motion, ECF No. 169, at 9–12.)

> Under Pennsylvania law, a party becomes a third-party beneficiary
>
> only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992) (citation omitted); *see also Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983) (adopting the Restatement (Second) of Contracts § 302 (Am. Law Inst. 1979)). Significantly, to achieve third-party beneficiary status, it is not enough that a contract has the result of benefiting a third party; rather, the third-party beneficiary must be "within [the promisor's] contemplation at the time the contract was entered into and [the promisor's] liability was intentionally assumed by him in his undertaking." *PA Energy Vision, LLC v. S. Avis Realty, Inc.*, 120 A.3d 1008, 1015 (Pa. 2015) (quoting *Kirschner v. K&L Gates LLP*, 46 A.3d 737, 762 (Pa. Super. 2012)). Thus, under Pennsylvania law, to be a third-party beneficiary, either (1) this status must be expressly set out in the contract itself, or (2) the circumstances for finding third-party beneficiary must be "compelling." *Brand*, 2008 WL 4279863, at *3.

The Reinsurance Agreement does not express an intention to benefit Plaintiff. The Agreement refers to Florists and HSB; no other entities are identified, and no specific insureds are mentioned. (*See* Reinsurance Agreement, ECF No. 158-2.) Notably, Florists and HSB entered into the Reinsurance Agreement more than twelve (12) years before Florists issued the Policy to

6

Plaintiff. (*See* Policy, ECF No. 158-1, at 1; Reinsurance Agreement, ECF No. 158-2, at 3.) Plaintiff has not identified any provision in the Reinsurance Agreement that creates an obligation on the part of HSB to Florists' *insureds*; by all accounts, the Reinsurance Agreement creates rights and duties between HSB and Florists exclusively. This is not enough to evidence an intent to benefit Plaintiff, or any of Florists' other insureds. *See, e.g., Taylor v. Pathmark Inc.*, No. 11-cv-7702, 2013 U.S. Dist. LEXIS 33526, at *27 (E.D. Pa. Mar. 11, 2013) ("[T]he fact that the obligee knows that he will perform the contracted-for services for a third party is not, in itself, sufficient to vest the third party with standing to sue on the contract." (quoting *Marsteller Cmty. Water Auth. v. P.J. Lehman Eng'rs*, 605 A.2d 413, 416 (Pa. Super. Ct. 1992))); *id.* at *30 (holding that the existence of a defense and indemnification agreement in a contract does not create a third-party beneficiary status).

Absent an express intention in the Reinsurance Agreement to benefit Plaintiff, the question before the Court becomes whether the circumstances here are "compelling" enough to "effectuate the intention of the parties" by recognizing Plaintiff's right to proceed with its breach of contract claim against HSB as a third-party beneficiary. *Brand*, 2008 WL 4279863, at *3. The Court finds and concludes that Plaintiff has offered no "compelling" reason to grant it third-party beneficiary status in this case. As the Eastern District of Pennsylvania explained in *Brand*, "[i]n those cases where a plaintiff has been permitted to bring a claim for breach of contract against a reinsurer or third party administrator, it has been under circumstances where recovery was not possible from the original insurer." *Id.* at *4 (citing *Koken v. Legion Ins. Co.*, 831 A.2d 1196 (Pa. Commw. 2003), *aff'd*, 878 A.2d 51 (Pa. 2005)). That is simply not the case here. There is no indication that Plaintiff would be unable to collect a judgment from Florists.

7

Plaintiff argues that the particular structure of this Reinsurance Agreement—where HSB serves as both reinsurer and claims investigator—paired with the implied covenant of good faith present in every contract constitutes both compelling circumstances and an intention to benefit Plaintiff under the Reinsurance Agreement. (Pl.'s Br. in Opp. to HSB's Motion, ECF No. 175, at 11–12.) The Court disagrees.

First, Plaintiff fails to convincingly explain why HSB filling both the reinsurer and claims investigator roles is different than an insurer obtaining a reinsurer and a separate claims adjuster, a situation that the court did not consider a "compelling" reason to grant third-party beneficiary status to the plaintiff in *Brand.* 2008 WL 4279863, at *4. Plaintiff's allegation that Florists is a "fronting" company for HSB is unpersuasive. This is not a case where an insured believed the reinsurer was its direct insurer, where the reinsurer was the insured's sole contact with their insurance company, or where the "fronting" insurance company bore no risk. *See Ario v. Swiss Reinsurance Am. Corp.*, 940 A.2d 552, 558 (Pa. Super. 2007). Rather, Plaintiff purchased the Policy from Florists, not HSB; Florists retained its obligations to Plaintiff, including its duty to pay claims and settlements; and Florists continued to bear risk, because Florists' liability to Plaintiff under the Policy was greater than HSB's liability to Florists under the Reinsurance Agreement. (*See* Reinsurance Agreement, ECF No. 158-2, at 4–5; Def.'s Reply Br. in Supp. of HSB's Motion, ECF No. 183, at 4.)

Second, and crucially, the implied covenant of good faith is not evidence of an intent to benefit a third party. Plaintiff's argument, if accepted by the Court, would mean every reinsurance agreement would necessarily intend to benefit individual policyholders as third-party beneficiaries, since every reinsurance agreement (and, indeed, every contract in general) contains the obligation to act in good faith. This is simply not the law in Pennsylvania. *See, e.g., Taylor*,

2013 U.S. Dist. LEXIS 33526, at *26 ("[T]his exception [for compelling circumstances] has been narrowly construed, as Pennsylvania courts have declined to extend third party beneficiary status to all members of the general public."); *Brand*, 2008 WL 4279863, at *3–4; *Scarpitti*, 609 A.2d at 150.

Because Plaintiff is not in contractual privity with HSB under either the Policy or the Reinsurance Agreement, and there is no basis to find the requisite third-party beneficiary status, Plaintiff cannot maintain a breach of contract claim against HSB. Count II is dismissed with prejudice.

### III. Count III: Bad Faith Against HSB

Count III of Plaintiff's Amended Complaint, brought pursuant to 42 Pa. C.S. § 8371, alleges Florists and HSB acted in bad faith toward Plaintiff. Section 8371 permits bad faith claims against insurers for certain acts and omissions "by the insurer" "toward the insured." In order to succeed on a bad faith claim pursuant to 42 Pa. C.S. § 8371, an insured must prove that the insurer (1) did not have a reasonable basis for denying benefits under the insurance policy; and (2) knew or recklessly disregarded its lack of reasonable basis for denying the claim. *Nw. Mut. Life. Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). "The insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004)). Among other conduct, "bad faith" pursuant to § 8371 includes: "an unreasonable delay in handling claims; a frivolous or unfounded refusal to pay; a failure to communicate with the insured; acting in a dilatory manner . . . . A bad faith claim may also arise when an insurance company conducts an inadequate investigation." *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 630–31 (W.D. Pa. 2014) (citations omitted).

9

HSB seeks dismissal of Count III against HSB, asserting that HSB is not Plaintiff's "insurer" under § 8371. (Def.'s Br. in Supp. of HSB's Motion, ECF No. 169, at 19–21.) Plaintiff argues that HSB acted as an insurer and therefore suit under § 8371 is appropriate. (Pl.'s Br. in Opp. to HSB's Motion, ECF No. 175, at 17–20.) Thus, the threshold question before the Court is whether HSB is "an insurer" within the meaning of 42 Pa. C.S. § 8371.

Although § 8371 does not define "insurer," Pennsylvania law requires the Court to consider two factors when determining whether a party is an "insurer" for the purposes of the bad faith statute: "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as the insurer." *Brown*, 860 A.2d at 498.

Regarding the first factor, the Court noted above that HSB is not a party to the Policy between Florists and Plaintiff, and HSB is mentioned nowhere on those policy documents. In fact, the Policy clearly identifies Florists as the issuing insurer. (Policy, ECF No. 158-1, at 2.) However, the second factor carries significantly more weight, because it "focuses on the true actions of the parties rather than the vagaries of corporate structure and ownership." *Brand*, 2008 WL 4279863, at *4 (quoting *Brown*, 860 A.2d at 498–99). Under Pennsylvania law, "a party acts as an insurer when it 'issues policies, collects premiums and in exchange assumes certain risks and contractual obligations.'" *Id.* (quoting *T&N PLC v. Pa. Ins. Guar. Ass'n*, 800 F. Supp. 1259, 1261 (E.D. Pa. 1992)).

For many of the same reasons discussed above, the Court concludes that Florists, and not HSB, is Plaintiff's insurer for the purposes of a bad faith claim pursuant to § 8371. Florists issued the Policy, collected premiums, made payments to its insureds, and assumed risks and contractual obligations to its insured. Although HSB received the portion of premiums attributable to equipment breakdown coverage from Florists and assumed obligations under the Reinsurance

Agreement, HSB assumed those obligations to *Florists*, and not to Plaintiff. Plaintiff fails to cite, and the Court is not aware of, any legal precedent to allow an insured to maintain a § 8371 bad faith claim against a reinsurer. In fact, courts applying Pennsylvania law have held the opposite—that parties lacking a contractual relationship with the insured, such as reinsurers, cannot be sued under § 8371. *See, e.g., McLaren*, 853 F. Supp. 2d at 510–11; *Brand*, 2008 WL 4279863, at *4–5; *see also Reid*, 469 A.2d at 463–63 ("Because the reinsurer has not assumed a contractual duty to represent the original insured, he has no obligation to the original insured which he must discharge in good faith."). Similarly, under Pennsylvania law, third-party claims investigators engaged by the insurer of record are not insurers for the purposes of a § 8371 bad faith claim. *See Brand*, 2008 WL 4279863, at *5 (citing *Ressler v. Enter. Rent-A-Car Co.*, No. 06-cv-562, 2007 WL 2071655, at *6 (W.D. Pa. July 13, 2007)). Given that neither reinsurers nor third-party claims investigators are considered "insurers" under § 8371, the fact that HSB held both roles does not somehow transform HSB into Plaintiff's insurer.

To the extent Plaintiff is able to state a bad faith claim against any party, that party can only be Florists, Plaintiff's insurer. Count III is dismissed against HSB. Because the Court concludes that the involved pleadings cannot be cured by amendment, this dismissal is with prejudice.

### IV. Count IV: Civil Conspiracy Against Florists and HSB

Count IV of the Amended Complaint is a claim for civil conspiracy against Florists and HSB, in which Plaintiff alleges that "Florists and HSB acted maliciously in concert to injure Three Rivers for the sole purpose of minimizing their losses and maximizing their profits." (First Am. Compl., ECF No. 158, ¶ 175.) Both Florists' and HSB's Motions ask the Court to dismiss this claim. The essential elements of a civil conspiracy claim are: "(1) a combination of two or more

persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Kist v. Fatula*, No. 06-cv-67, 2007 WL 2404721, at *9 (W.D. Pa. Aug. 17, 2007). Proof of malice (i.e., an intent to injure, without justification) is also essential in proof of a conspiracy. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

The parties agree that a claim for civil conspiracy cannot be pled without alleging an underlying tort. *See Kist*, 2007 WL 2404721, at *9; *Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 11-cv-1338, 2013 WL 1180312, at *13 (W.D. Pa. Mar. 20, 2013). Because breach of contract is not a tort, it cannot qualify as an act underlying a conspiracy claim. *See Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 664 (3d Cir. 1993) ("Breach of contract, without more, is not a tort."). Although not mentioned under Count IV of the Amended Complaint, Plaintiff argues in its briefs that its bad faith claim under 42 Pa. C.S. § 8371 supports its civil conspiracy claim. (*See* Pl.'s Br. in Opp. to Florists' Motion, ECF No. 174, at 4–5; Pl.'s Br. in Opp. to HSB's Motion, ECF No. 175, at 20–21.) Defendants counter that allowing a third party to be liable for civil conspiracy predicated on § 8371—when Pennsylvania law is clear that only insurers can be liable under the statute itself—would impermissibly expand liability under the bad faith statute to include non-insurer third parties and allow Plaintiff to assert "back door" bad faith claims. (Def.'s Reply Br. in Supp. of Florists' Motion, ECF No. 184, at 3–5.)

No Pennsylvania court has determined whether a claim for bad faith under 42 Pa. C.S. § 8371 can be a predicate tort for a civil conspiracy claim, but this Court need not reach this decision today. Plaintiff's civil conspiracy claim fails because the Amended Complaint is insufficient on its face to show the required "malice." Malicious intent requires that a defendant acted "solely to injure" a plaintiff; injury that is incidental to another purpose, even if it appears

12

"selfish or unreasonable," is not malicious. *Thompson Coal Co.*, 412 A.2d at 472. In other words, a successful claim for civil conspiracy "requires that 'the sole purpose of the conspiracy is to injure the plaintiff,' not just that the plaintiff was injured." *Barker v. Hostetter*, 2014 WL 1464319, at *31 (E.D. Pa. Apr. 15, 2014) (citing *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 418–19 (E.D. Pa. 2009)). A showing that the acts alleged were done to advance the defendant's business interests, such as to increase company profits, precludes a civil conspiracy claim, since this means injuring the plaintiff was not the *sole* purpose of the conspiracy. *Bro-Tech Corp*, 651 F. Supp. 2d at 419.[3]

In both the Amended Complaint and its briefings, Plaintiff repeatedly alleges that Defendants conspired "for the sole purpose of minimizing their losses and maximizing their profits." (First Am. Compl., ECF No. 158, ¶ 175.) Indeed, the first paragraph of the "Introduction" section of the Amended Complaint references a conspiracy "to place company profits over its insured" and alleges Defendants acted "solely to increase company commissions and profits." (*Id.* at 1.) These allegations require dismissal of the civil conspiracy claims against Florists and HSB.[4] As a court applying Pennsylvania law held in a similar case:

> Plaintiff['s] case is built on the theory that Defendants acted for their own business advantage and benefit. Plaintiff[] h[as] adduced significant evidence to show as much, and many claims based on this theory survive for trial. One consequence of

---

[3] *See, e.g., Doltz v. Harris & Assocs.*, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003) ("Merely describing something as malicious is not sufficient to give the proper inference of malice . . . . [M]alice requires an allegation that the sole purpose of the conspiracy was to injure the plaintiff.") (quoting *Watkins v. Pa. Bd. Of Prob. & Parole*, No. 02-cv-2881, 2002 WL 32182088, at *9 (E.D. Pa. Nov. 25, 2002)); *Simon v. Unum Provident Corp.*, No. 99-cv-6638, 2002 WL 1060832, at *9 (E.D. Pa. May 29, 2002) ("An action for conspiracy will lie only where the sole purpose of the conspiracy is to cause harm to the party who claims to be injured. Thus, where the facts show that a person acted to advance his own business interests, those facts constitute justification and negate any alleged intent to injure." (citation omitted)); *Spitzer v. Abdelhak*, No. 98-cv-6475, 1999 U.S. Dist. LEXIS 19110, at *29 (E.D. Pa. Dec. 15, 1999) (stating that malice in a civil conspiracy claim requires an allegation that the sole purpose of the conspiracy was to injure the plaintiff).

[4] This conclusion is not inconsistent with this Court's earlier decision in *Stillwagon*, where the Court concluded that a party sufficiently alleged malice in a financial fraud-related civil conspiracy claim because "[t]he natural consequence of [the adverse party's] actions [was] to intentionally injure the companies." 2013 WL 1180312, at *21. In this case, Plaintiff's allegations in its Amended Complaint become its undoing—by repeatedly alleging Defendants acted for the *sole purpose* of increasing their own profits, Plaintiff forecloses a finding of malice.

this approach is that a civil conspiracy claim is not now tenable because Plaintiff['s] evidence belies the notion that Defendants acted without a business motive, but purely out of malice.

*Bro-Tech Corp.*, 651 F. Supp. 2d at 419. Accordingly, Count IV is dismissed with prejudice against both Florists and HSB.

## V. Florists' Motion to Strike

Florists' Motion asks the Court to strike certain language in paragraphs 5, 143–50, 168, and 171 of Plaintiff's Amended Complaint alleging either (1) that Florists is vicariously liable for HSB's acts and omissions, or (2) that Florists breached the Reinsurance Agreement. (Florists' Motion, ECF No. 170, at 1.) Florists also seeks to strike the "Introduction" section of Plaintiff's Amended Complaint, a four-page prosaic narrative that Florists argues is patently redundant of later paragraphs and violates Federal Rule of Civil Procedure 10(b), which requires claims to be set forth in numbered paragraphs limited to a single set of circumstances. (*Id.* at 1, 3.)

Because motions to strike are generally disfavored, a party seeking to strike material in a pleading carries a heavy burden. Courts have identified prejudice to one or more parties as a touchstone for deciding a motion to strike, even where challenged material is redundant, immaterial, impertinent, or scandalous. *Fulton Fin. Advisers*, 2013 WL 5635977, at *19. Importantly, a motion to strike is not a procedural device to dispose of legal arguments an adverse party thinks are incorrect; however, Florists' arguments to strike Plaintiff's allegations of vicarious liability and breach of the Reinsurance Agreement are entirely based on the merits of Plaintiff's claims. Florists' Motion to strike language in paragraphs 5, 143–50, 168, and 171 of Plaintiff's Amended Complaint is accordingly denied.

Florists' challenge to the "Introduction" section of Plaintiff's Amended Complaint is a more appropriate use of a Rule 12(f) motion to strike, for that section constitutes a technical

14

violation of Rule 10(b) and is redundant of later numbered paragraphs contained in the Amended Complaint. For this reason, the Court will disregard the entirety of the Introduction section and consider only the numbered paragraphs of the Amended Complaint. In responding to the Amended Complaint in its eventual Answer, Florists need only respond to the numbered paragraphs. Because the Court concludes any prejudice to Florists can be remediated without exercising the Court's discretion to strike, Florists' Motion to strike the Introduction section is accordingly denied without prejudice.

## VI. Conclusion

For the reasons stated in this Opinion, HSB's Motion, ECF No. 168, is GRANTED in its entirety. HSB is accordingly dismissed as a Defendant. Florists' Motion, ECF No. 170, is GRANTED as to its motion to dismiss Count IV and DENIED as to its motion to strike.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: February 8, 2018

cc: All counsel of record