# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THREE RIVERS HYDROPONICS, LLC,

    Plaintiff,

    v.

2:15-cv-809

FLORISTS' MUTUAL INSURANCE
COMPANY,

    Defendant.

## MEMORANDUM OPINION

Pending before the Court are Defendant's Motions in Limine to Preclude the Testimony (or portions thereof) of three (3) of the Plaintiff's expert witnesses. For the reasons that follow, each Motion is GRANTED in whole or in part.

## I. BACKGROUND

This matter arises out of a first-party claim for insurance coverage made by Three Rivers Hydroponics ("Plaintiff") under a property insurance policy issued by Florists' Mutual Insurance Company ("Defendant"). The claims stem from a small fire that occurred at Plaintiff's commercial greenhouse, which reportedly damaged a component of Plaintiff's water-sterilization system (referred to as the "ozone system").

Plaintiff alleges that: (1) Defendant wrongly denied coverage to replace the entire ozone system; (2) Defendant wrongly denied coverage for crops that were damaged by ozone exposure caused by a mechanical breakdown of the ozone system; and (3) Plaintiff was forced out of business as a result of the Defendant's conduct. (Compl., ECF No. 1.) The Complaint alleges causes of action under breach of contract and statutory bad faith. (*Id.*) Plaintiff seeks compensatory damages, attorneys' fees, punitive damages, interest, and court costs. (*Id.*)

1

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

District courts act as gatekeepers, ensuring "that any and all scientific testimony or evidence admitted is . . . reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). And our Circuit has explained that the admissibility of expert testimony hinges on a "trilogy of restrictions": qualification, reliability, and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The party offering the expert testimony has the burden of establishing each of these requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 705 (3d Cir. 1999).

## III. DISCUSSION

There are three (3) motions pending before the Court: (1) Defendant's Motion in Limine to Preclude Portions of the Testimony of Shawn D. Fox (ECF No. 230); (2) Defendant's Motion in Limine to Preclude the Testimony of Charles M. Miller (ECF No. 232); and (3) Defendant's Motion in Limine to Preclude the Testimony of David Greenway (ECF No. 234). The Court will address each in turn.

### A. ECF No. 230 (Shawn D. Fox)

Plaintiff proffered Shawn D. Fox, a forensic accountant, as its damage expert to offer opinions regarding: (1) Plaintiff's damages for unreimbursed insurable losses stemming from the fire (i.e., amounts Plaintiff contends were covered under the Defendant's policy but not paid); and (2) Plaintiff's damages associated with its claim that it was forced out of business because it could not get its ozone system fixed after the fire. (Br. in Supp. of Mot. in Lim. to Preclude Portions of the Test. of Shawn D. Fox, ECF No. 231, at 1.)

Defendant seeks to preclude Fox's testimony and opinions only as to Plaintiff's second claim—the damages associated with Plaintiff's claim that it was forced out of business. (*Id.*) Defendant does not seek to preclude Fox's testimony regarding Plaintiff's claimed damages for unreimbursed insurable losses. (*Id.*)

The Motion at ECF No. 230 is uncontested. (Pl.'s Notice Re *Daubert* Mot. at [230], ECF No. 246.) Defendant's Motion is therefore granted in its entirety. Fox is precluded from testifying as to Plaintiff's damages associated with its claim that it was forced out of business.

### B. ECF No. 232 (Charles M. Miller)

Plaintiff has proffered Charles M. Miller, Esquire, as a bad faith expert to offer opinions regarding: (1) insurance industry standards and practices; (2) Defendant's handling of the insurance claim at issue; (3) Defendant's compliance with insurance statutes and regulations; and (4) the interpretation of Defendant's policy issued to Plaintiff. (Br. in Supp. of Mot. in Lim. to Preclude Portions of the Test. of Charles M. Miller, ECF No. 233, at 1.)

Defendant seeks to preclude the entirety of Miller's testimony, arguing that the attorney's conclusions of law will be unhelpful to the jury. (*Id.*) At the very least, Defendant requests that

Miller be precluded from testifying as to: (1) whether or not the Defendant violated statutes or regulations; and (2) the interpretation of Plaintiff's insurance policy. (*Id.* at 2.)

Miller's testimony hinges on "fit." Under Rule 702, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." There must be a "connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994). "Fit is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.* (quoting *Daubert*, 509 U.S. at 591). The standard for fit is "not that high," although it is "higher than bare relevance." *Id.* at 745.

Here, the Defendant argues that Miller's testimony does not "fit" the claim at issue: bad faith is a legal concept of general application, which does not require scientific, technical, or specialized knowledge to be presented to assist the jury. (ECF No. 233, at 3.) In support of that argument, Defendant offers several cases that state that expert testimony is not *required* to prove an insured's bad faith claim against an insurer. *See, e.g., McCrink v. Peoples Benefit Life Ins. Co.*, 2005 WL 730688, at *4 (E.D. Pa. Mar. 29, 2005); *Dattilo v. State Farm Ins. Co.*, 1997 WL 644076, at *5 (E.D. Pa. Oct. 17, 1997); *Bergman v. United Servs. Auto. Ass'n*, 742 A.2d 1101, 1106–08 (Pa. Super. 1999). None of those cases, however, declare that expert testimony is *prohibited* in such circumstances.

In response, the Plaintiff argues that the jury will require assistance in understanding what constitutes reasonable conduct when handling an insurance claim involving ozone equipment and crop loss. (Pl.'s Br. in Opp'n to Def.'s *Daubert* Mot. to Preclude the Test. of Charles M. Miller, ECF No. 238.) And that, Plaintiff argues, is exactly what Miller's testimony will do. (*Id.*)

The Court agrees with the Plaintiff and finds that Miller's testimony (as limited by the Court below) will assist the jury in determining what constitutes reasonable conduct when handling an insurance claim. In the Court's estimation, Miller's twenty-six (26) years of experience as a claims adjuster will be quintessentially helpful in providing the jury with guideposts as to what constitutes reasonable adjusting and claims handling conduct and will be substantially more useful than asking the jury to in essence "wing it" as to reasonableness in this out-of-the-ordinary situation.

Thus, the Motion at ECF No. 232 is granted in part and denied in part. Miller is permitted to testify as to best practices in handling insurance claims of the type involved here. Miller may not discuss his legal training or experience. And he is not permitted to testify as to whether or not the Defendant violated statutes or regulations (but he is not barred from testifying as to what constitutes best practices regarding the handling of insurance claims, even if the genesis of such practices are statutes or regulations, which he cannot talk about).

### C. ECF No. 234 (David Greenway)

Lastly, Plaintiff proffered David Greenway, an engineer, as a damages and causation expert to offer opinions that: (1) the most probable cause of Plaintiff's alleged crop failure was the failure of the ozone generator to receive or process the desired control signal from a specific component of the ozone system—the ORP controller; (2) the most probable cause of the fire was the back flow of water into the ozone generator; (3) another component of the ozone system—the oxygen concentrator—experienced damage in connection with the event because of a back flow of water into the gas supply lines; and (4) any defects in the ozone system should have been detected and corrected by an insurance auditor prior to the Defendant issuing an insurance policy to the Plaintiff.

(Br. in Supp. of Mot. in Lim. to Preclude Portions of the Test. of David Greenway, ECF No. 235, at 1–2.)

Defendant now seeks to preclude Greenway's testimony and opinions regarding: (1) the probable cause of the crop failure; (2) the damage to the oxygen concentrator; and (3) whether or not any defects in the ozone system should have been detected and corrected by an insurance auditor prior to Defendant issuing an insurance policy to Plaintiff. (*Id.* at 2.) Defendant does not seek to preclude Greenway's testimony that the most probable cause of the fire in the ozone generator was the back flow of water into the ozone generator. (*Id.*)

### 1. Qualification

The Court finds that Greenway is not qualified to offer an opinion on: (1) whether or not the ORP controller was the probable cause of the crop failure; or (2) insurance auditing.

An expert witness's qualification stems from their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expert therefore must "possess specialized expertise." *Schneider*, 320 F.3d at 405. Our Circuit has "interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert as such." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003). However, "[a]n expert may be generally qualified but may lack qualifications to testify outside [their] area of expertise." *Id.* at 322. While "background, education, and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions." *Id.*

Here, Defendant argues that while Greenway may have experience with process analysis and overall ozone system design, he expressly admits that he does not use ORP sensors in his designs, and that he is not an expert regarding such. (*See* Pl.'s Br. in Opp'n to Def.'s *Daubert* Mot. to Preclude Portions of the Test. of David Greenway, ECF No. 237, at 8 (conceding that Greenway

6

is not "an expert with the regards to ORP sensors").) And the Court agrees. Greenway does not have any special skill, knowledge, or experience that qualifies him as an expert or enables him to speak to the ORP controller's connection to the causation in this case. It would be illogical to let Greenway testify as an expert regarding a topic on which he has no expertise.

Similarly, the Defendant argues that Greenway has never worked for an insurance company or conducted insurance underwriting and is therefore unqualified to offer an opinion regarding whether or not any defects in the ozone system should have been detected and corrected by an insurance auditor. (Br. in Supp. of Mot. in Lim. to Preclude Portions of the Test. of David Greenway, ECF No. 235, at 14.) Again, the Court agrees. Greenway lacks knowledge or expertise that would allow him to opine on appropriate insurance auditing. Thus, based on the "fit" factor alone, Greenway's testimony will be limited as noted above.

### 2. Reliability

The Court also concludes that, separately and distinctly, Greenway's testimony regarding the oxygen concentrator is unreliable and is thus inadmissible.

The Court's gatekeeper role requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. Experts are not permitted to engage in a "haphazard, intuitive inquiry." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000). Rather, experts must explain the research and methodology they employed in sufficient detail in order to allow the other party's expert to test that hypothesis. *Id.* Where an expert fails to use standards to control their analysis, "no 'gatekeeper' can assess the relationship of [the expert's] method to other methods known to be reliable and the non-judicial uses to which it has been put." *Id.* at 158.

7

Here, the Defendant argues that Greenway's opinion regarding the oxygen concentrator is neither supported by factual foundation nor scientific methodology. (ECF No. 235, at 14.) Most notably, the Defendant argues that "Greenway formulated the conclusion in his Report [regarding the oxygen concentrator] without conducting any inspection or testing of the oxygen concentrator." (*Id.* at 13.)

In the Court's estimation, the most that Greenway can offer is a conclusion based on speculation, which doesn't cut it in these circumstances. He never physically inspected the component at issue and fails to adequately explain the methodology that supports his conclusion, or its reliability in these circumstances. Simply put, Greenway's opinion regarding the oxygen concentrator is conclusory and unreliable and is thus inadmissible.

### 3. Conclusion

The Motion at ECF No. 234 is granted in its entirety. Greenway is precluded from testifying to or offering an opinion on: (1) the probable cause of the crop failure as it relates to the ORP controller; (2) damage to the oxygen concentrator; or (3) whether or not deficiencies should have been detected by an insurance auditor. And the following statements will be stricken from the reports and his testimony:

1. "The most probable cause of the crop failure in 2014 was the failure of the ozone generator to receive or process the desired control signal from the ORP controller. This would not only result in high concentrations of ozone in the aqueous phase (root damage) but would also allow excess ozone to be emitted in the greenhouse. This would result in higher concentrations of ambient ozone." (ECF No. 235-1, at 6, ¶ 1.)

2. "The oxygen concentrator experienced damaged in connection with the Event because of the backflow of water into the gas supply line to the Mazzei injector. At a minimum, the contents of the sieve beds should have been replaced since they likely experienced damage as a direct result of water entering the oxygen concentrator." (ECF No. 235-1, at 6, ¶ 3.)

3. "[H]owever; these deficiencies should have been detected by the insurance auditor and corrected prior to issuing the insurance policy on the facility." (ECF No. 235-2, at 2, ¶ 2.)

8

## IV. CONCLUSION

The Motions at ECF Nos. 230, 232, and 234 are granted as set forth above. An appropriate Order will issue.

_____
Mark R. Hornak
Chief United States District Judge

Dated: January 27, 2020
Cc:    All counsel of record